UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:                                                          Case No. 09-68742-wsd

HICKS, PORSHA A.,                                               Chapter 7

        Debtor.                                         Hon. Walter Shapero

_____/

### OPINION GRANTING MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707(b)(3)

This matter came before the Court upon the United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(3). (Docket No. 20). Debtor filed a Response to the Motion and an evidentiary hearing was held. Following the hearing, the parties submitted post-hearing briefs.

### Facts

The facts of this matter are not in dispute. The Debtor, Porsha Hicks, filed her voluntary chapter 7 petition on September 16, 2009. Debtor is twenty-eight years old and married. Her spouse is not a debtor in this proceeding. Debtor and her spouse have one child together, and non-debtor spouse has a 10 year old son from a previous relationship.

Debtor moved to Detroit in 2004 to work for Ford Motor Company. Thereafter, she met her husband, and they were married in 2006. Debtor's husband was employed in a radio advertising sales position at the time. The couple purchased an investment property ("JoAnn Street Property") and a residence in which to live ("Kensington Avenue Property"). As the economy began to worsen in 2007, Debtor's husband lost his job. To secure employment, he moved to Alabama. Debtor, sensing that her employment at Ford may be less than fully secure, found replacement employment with Compass Bank in Alabama and joined her husband there a few months after his initial move.

Sometime after the move to Alabama, Debtor's husband lost his job there. He has been unemployed for approximately 18 months and, at the time of the hearing, was

1

enrolled as a full-time student at an online university while he searched for work. Debtor indicated that he had nearly completed all of the coursework to receive his bachelor's degree, and was expected to graduate in June 2010.

Since Debtor's husband became unemployed, Debtor has been the sole source of family income (save for occasional help from friends and family). In addition to the normal joint living expenses such as food, rent, utilities, etc., Debtor also pays certain obligations for which her husband alone is liable. These include monthly expenses for child support ($529); overdue medical bills ($225); and student loans ($120). Debtor also contributes to the funding of her husband's current college enrollment, and pays $175 per month (prorated throughout the year) for his 10 year old son to attend summer camp.

Prior to the hearing, Debtor filed an amended Schedule J to reflect the changes in expenses due, at least in part, to the birth of her daughter in February, 2010. (Docket No. 32). The amended schedule includes the non-debtor spouse's individual obligations mentioned above with the exception of the $120 per month student loan repayment which is not included. That schedule shows a monthly deficit of $411.88.

Debtor also filed an affidavit prior to the hearing attesting to several changed circumstances. (Docket No. 30). The affidavit informs that her husband will be graduating in June 2010 and his student loans (presumably the $120 per month payment) will begin to come due 30 to 60 days thereafter. It also informs that Debtor herself will at some future point begin paying on her student loans and the payment will be $337 per month. The other information set forth in the affidavit, e.g., day care expenses, etc., appears to be reflected in the amended Schedule J.

Debtor lists $108,794.61 in unsecured non-priority debts on her bankruptcy schedules. Of the aforementioned sum, $54,754 is attributable to education loans of the Debtor, and $45,000 is attributable to an anticipated deficiency balance on the Kensington Avenue Property which is going through foreclosure. The only other unsecured debts listed are $103 relating to Charter Communications, $8,208.69 in credit card debt, and $729 to Kay Jewelers for purchase of a watch and ring.

2

## Discussion

Section 707(b)(1) provides, in part,

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

In those cases where the presumption of abuse does not arise, as here, or is otherwise rebutted, and where bad faith is not a factor, the Court is directed to consider the totality of the circumstances in determining whether dismissal for abuse is warranted. 11 U.S.C. § 707(b)(3)(B).

In determining whether this case constitutes an "abuse" under § 707(b)(3), the Court must examine the totality of the circumstances and determine whether the Debtor is "honest" and "needy". *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Behlke*, 358 F.3d 429, 434 (6th Cir. 2004). "'[H]onest,' in the sense that [Debtor's] relationship with his [or her] creditors has been marked by essentially honorable and undeceptive dealings, and […] 'needy' in the sense that his [or her] financial predicament warrants the discharge of his [or her] debts in exchange for liquidation of his [or her] assets." *Krohn*, 886 F.2d at 126. The UST bears the burden of establishing by a preponderance of the evidence that the case should be dismissed as an abuse under § 707(b)(3). *In re Beckerman*, 381 B.R. 841, 844 (Bankr. E.D. Mich. 2008).

There is no allegation or indication that Debtor has been anything other than honest in her relationship with her creditors, and therefore the inquiry is limited solely to whether Debtor is "needy" of a chapter 7 discharge. In making determinations as to neediness, courts have looked to the following non-exclusive factors:

> (a) whether the Debtor has the ability to repay his debts out of future earnings; (b) whether the Debtor enjoys a stable source of future income; (c) whether the Debtor is eligible for chapter 13 relief; (d) whether there are state remedies with the potential to ease the Debtor's financial predicament; (e) whether relief may be obtained through private negotiations with creditors; and (f) whether expenses can be reduced significantly without depriving the Debtor of adequate food, clothing, shelter and other necessities.

*In re Beckerman*, 381 B.R. at 845 (citing *In re Krohn*, 886 F. 2d at 126-27).

The UST's Motion in this case is largely premised on the fact that Debtor could fund a chapter 13 plan that repays a significant amount of her unsecured debt with the money she is currently paying to the creditors of her non-debtor spouse. The UST also alleges that Debtor could reduce some of her expenses such as her $521 monthly car payment by trading vehicles with her mother.[1] Other expenditures that may be capable of reduction without depriving Debtor and her dependents of necessities include Debtor's $218 monthly contribution to her 401(k) and the $200 per month cable and internet expense listed on amended Schedule J.

If Debtor were to cease paying her non-debtor spouse's child support, past due medical bills, and his son's summer camp, that would free up $929 each month. If the $411.88 Schedule J deficit is backed out of this figure, that still leaves roughly $517. Further, if Debtor's future student loan repayments of $337 per month are taken into account, $180 remains.

Of Debtor's $108,794.61 in unsecured non-priority debts, roughly half, $54,754, is student loan debt that, presumably, is non-dischargeable. Debtor indicates in her affidavit that she intends to start paying $337 per month on these obligations after her bankruptcy case is closed. So, if the $180 per month arrived at in the above paragraph were applied to the remaining $54,040 in unsecured debt, over a 60 month plan, there would be a roughly 20% distribution to those unsecured creditors. If the vehicle expense, cable expense, and 401(k) contribution were reduced, the distribution to unsecured creditors would be even greater.

The threshold question in this case is whether a debtor should be able to remain in chapter 7 when she would be able to fund a chapter 13 plan but for the fact that she is paying her non-debtor husband's individual debts?

There is no issue as to the fact that the $529 child support payment and $225 payment for overdue medical bills are exclusive obligations of Debtor's husband. Debtor herself has no individual liability for these obligations. Debtor points out, in explaining

---

[1] Debtor's vehicle is financed in her mother's name and she pays $521 to her mother each month to make the payment. Debtor's mother's vehicle is financed in the Debtor's name, and the mother apparently pays Debtor for that each month. The UST proposed that Debtor could switch vehicles with her mother, as the latter's monthly vehicle payment is roughly $200 less.

her desire to continue paying the child support obligation, that were this not paid, her husband may be incarcerated which would have a detrimental effect on their family. Debtor also testified that they had gone to family court and sought to have the amount of monthly support reduced due to her husband's unemployment, apparently achieving some limited success.[2] The rationale for paying her husband's other debts was not explicitly iterated, other than a passing mention in Debtor's testimony of a desire that one of them stay out of bankruptcy to try to retain a certain level of creditworthiness.

Debtor's husband was to have graduated with a bachelor's degree in June 2010. His resume, admitted into evidence as an exhibit, indicates that he has previously had a successful career in media advertising sales. Debtor testified that he has continued his employment search and the Court thinks it quite likely that he will eventually secure employment. When and if he does, Debtor's situation will materially change because she will no longer be the sole income source for the family, and, presumably, he will begin to pay his child support obligation.

While there is not a large body of case law on the issue, at least one court has looked unfavorably upon a debtor paying a non-debtor spouse's child support obligation. See, e.g., *In re Urban*, 2010 WL 2076807 (Bkrtcy.D.Wyo., May 24, 2010). More troubling, however, than payment of the child support obligation, is the payment of the overdue medical bills that are solely the responsibility of the non-debtor spouse. If this were to continue as a chapter 7, the result would be that the non-debtor's debts would continue to be repaid by Debtor at the expense of her own creditors. That is a strikingly unjust result, particularly when this $225 per month payment alone would result in a material dividend to her unsecured creditors if paid into a 60 month chapter 13 plan. In situations of this kind, the primary, if not exclusive, focus should be the treatment of the debtor's, and not someone else's, creditors. To permit a debtor to discharge her own debts where (a) her financial circumstances enable her to continue to both support herself and pay the kind of non-debtor's debts at issue here (debts which would likely be dischargeable in a bankruptcy case if filed by that non-debtor), and (b) her intention is to do just that, operates to undercut that focus. The rationale offered for doing so, however

---

[2] There was testimony that an earlier amount was reduced by approximately $100 to arrive at the present $529 per month.

well intentioned, is not sufficient to justify it. As such, it constitutes an abuse, at least under the recited facts before the Court.

There are, to be sure, other expenses which can potentially be reduced so as to allow Debtor to fund a hypothetical chapter 13 plan, but the Court need not reach decisions as to the appropriateness of each, because the $225 monthly payment to the non-debtor husband's medical creditors itself can materially fund a hypothetical chapter 13 plan. Accordingly, the Court sees no need at this time to pass on the appropriateness of Debtor's vehicle expense, cable expense, 401(k) contribution, payment of step-son's summer camp, or any other expenditure.

Examining the other factors relevant *Krohn* factors, the Court notes the following: Debtor's employment appears stable and she has received raises each of the last 3 years; she would be qualified to be a chapter 13 debtor; there was no evidence introduced regarding state law remedies that might ease debtor's financial predicament other than further petitioning the family court to reduce her husband's monthly child support payment; and there was no indication that Debtor could reach a private settlement with her creditors. On balance, these circumstances lead to the conclusion that Debtor is not herself sufficiently "needy" of chapter 7 relief and the case is therefore an abuse under the totality of the circumstances.

## **Conclusion**

For the reasons set forth above, the Court will enter an order conditionally granting the UST's Motion to Dismiss pursuant to 11 U.S.C. § 707(b) unless, within 20 days from the entry of said order, Debtor converts to a chapter 13 proceeding. The UST shall present an appropriate order.

.

6

09-68742-wsd    Doc 39    Filed 07/21/10    Entered 07/21/10 16:36:57    Page 6 of 7

**Signed on July 21, 2010**

                                                **/s/ Walter Shapero**
                                                **Walter Shapero**
                                                **United States Bankruptcy Judge**